UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KEWAN KING,                                        Case No. 18 CV 2997

                Plaintiff,

                                                                                       **COMPLAINT**

   -against-

                                                                                        JURY DEMAND

THE CITY OF NEW YORK, P.O.
PATRICK CASIANO [SHIELD # 4363],
P.O. ALMANZER, SERGEANT MICHA
NOCERINO [TAX REG. # 937192], and
JOHN DOE AND JANE DOE #1-10
(the names John and Jane Doe being
fictitious, as the true names are
presently unknown),
                Defendants.
-------------------------------------------------------------------X

Plaintiff, KEWAN KING, by his attorney, The Law Offices of UGO UZOH, P.C., complaining of the defendants herein, The City of New York, P.O. Patrick Casiano [Shield # 4363], P.O. Almanzer, Sergeant Micha Nocerino [Tax Reg. # 937192], and John Doe and Jane Doe #1-10 (collectively, "defendants"), respectfully alleges as follows:

1. This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and/or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. §1983, [and arising under the law and statutes of the City and State of New York].

JURISDICTION

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

3. As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

## THE PARTIES

4. Plaintiff is and was at all times material herein a resident of the United States and the State of New York.

5. Defendant City of New York ("City") is a municipal corporation duly organized and existing under the laws of the State of New York.

6. The City of New York Police Department ("NYPD") is an agency of defendant City, and all officers referred to herein were at all times relevant to this complaint employees and agents of defendant City.

7. Defendant P.O. Patrick Casiano [Shield # 4363] was at all times material herein a police officer employed by the NYPD. He is named here in his official and individual capacities.

8. Defendant P.O. Almanzer was at all times material herein a police officer employed by the NYPD. S/he is named here in his or her official and individual capacities.

9. Defendant Sergeant Micha Nocerino [Tax Reg. # 937192] was at all times material herein a sergeant employed by the NYPD. S/he is named here in his or her official and individual capacities.

10. Defendants John Doe and Jane Doe #1-10 were at all times material herein individuals and/or officers employed by the NYPD. They are named here in their official and individual capacities.

11. Defendants Casiano, Almanzer, Nocerino, and John Doe and Jane Doe #1-10 are collectively referred to herein as "defendant officers".

12. At all times material to this Complaint, the defendant officers acted towards plaintiff under color of the statutes, ordinances, customs, and usage of the State and City of New York.

FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

The July 19, 2017, Incident

13. On or about July 19, 2017, at approximately 6:30 p.m., defendant officers, acting in concert, arrested plaintiff without cause at or within the vicinity of 131 Belmont Avenue, Brooklyn, New York, and charged plaintiff with N.Y. PL 221.10 'Criminal possession of marihuana in the fifth degree' and N.Y. PL 221.05 'Unlawful possession of marihuana'.

14. Plaintiff, however, was not in possession of any marihuana and did not commit any offense against the laws of New York City and/or State for which any arrest may be lawfully made.

15. Prior to the arrest, plaintiff and his cousin, Ramel King, together with their friend, Julien Ford, were sitting on a bench located in front of the aforementioned address when they were approached by defendant officers.

16. Upon approach, defendant officers immediately directed them -- the plaintiff, his cousin and their friend -- to place their hands behind their backs.

17. Defendant officers then proceeded to place them under arrest and tightly handcuffed the plaintiff with his hands placed behind his back.

18. Plaintiff enquired as to the reason for the arrest.

19. Defendant officers ignored the plaintiff's inquiries.

20. Eventually, defendant officers forcibly pushed the plaintiff into their police vehicle and transported the plaintiff to NYPD-73rd Precinct where he was interrogated by defendant officers.

21. After a period of time, defendant officers transported the plaintiff to NYPD-Housing Police Service Area 2 where he was further interrogated.

22. After detaining the plaintiff for a lengthy period of time at the precinct and/or station house, defendant officers caused a legal process to be issued to the plaintiff requiring him to appear in the criminal court on September 11, 2017.

23. On September 11, 2017, plaintiff appeared in the criminal court as he was directed but was advised that the prosecutors had concluded that he did not commit any crime or offense and, therefore, had declined to prosecute him.

The September 14, 2017, Incident

24. On or about September 14, 2017, at approximately 8:00 p.m., defendant officers, acting in concert, arrested plaintiff without cause at or within the vicinity of 131 Belmont Avenue, Brooklyn, New York, and charged plaintiff with N.Y. PL 110.00/215.40(2) 'Attempted tampering with physical evidence' and N.Y. PL 221.05 'Unlawful possession of marihuana'.

25. Plaintiff, however, did not tamper, nor attempt to tamper, with any evidence, was not in possession of any marihuana, and did not commit any offense against the laws of New York City and/or State for which any arrest may be lawfully made.

26. Prior to the arrest, plaintiff was at the aforementioned address socializing with his girlfriend, Tamika Grant, his brother, Kevin King, and his brother's girlfriend, Tyra Lewis, when he was approached from behind by defendant officers.

27. Upon approach, defendant officers immediately directed the plaintiff to place his hands behind his back.

28. Defendant officers then proceeded to place the plaintiff under arrest and tightly handcuffed the plaintiff with his hands placed behind his back.

29. Plaintiff enquired as to the reason for the arrest.

30. Defendant officers ignored the plaintiff's inquiries.

31. Eventually, defendant officers forcibly dragged and pulled the plaintiff by the handcuffs, pushed him into their police vehicle, and transported the plaintiff to NYPD-73rd Precinct where he was interrogated by defendant officers.

32. Plaintiff complained that the handcuffs were too tight and were causing him to experience pain.

33. Plaintiff pleaded with defendant officers to remove or loosen the handcuffs.

34. Defendant officers ignored the plaintiff's entreaties to remove or loosen the handcuffs.

35. After a period of time, defendant officers transported the plaintiff to NYPD-Housing Police Service Area 2 where he was further interrogated.

36. After detaining the plaintiff at the precinct and/or station house for a lengthy period of time, plaintiff was transported to the Central Booking to await arraignment.

37. While plaintiff was awaiting arraignment, defendant officers met with prosecutors employed by Kings County District Attorney's Office.

38. During this meeting, defendant officers falsely stated to the prosecutors, among other things, that the plaintiff was in possession of marihuana and attempted to tamper with evidence.

39. Based on the false testimony of defendant officers, the prosecutors initiated criminal actions against the plaintiff.

40. Upon arraignment, plaintiff was informed that the case against him was adjourned in contemplation of dismissal.

41. On or about March 14, 2018, the false charges levied against the plaintiff were summarily dismissed.

42. Each and every officer who responded to and/or was present at the location of the arrest(s) and at the precinct and/or station house knew and was fully aware that the plaintiff did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

43. Nonetheless, defendants did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to protect and ensure the safety of the plaintiff.

44. As a result of the aforesaid actions by defendants, plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, wages and financial losses, pain and damage, and damage to reputation.

FIRST CAUSE OF ACTION: FALSE ARREST - against defendant officers

45. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 44 of this complaint as though fully set forth herein.

46. The conduct of defendant officers, as described herein, amounted to false arrest.

47. Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

48. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SECOND CAUSE OF ACTION: EXCESSIVE USE OF FORCE - against defendant officers

49. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 48 of this complaint as though fully set forth herein.

50. The conduct of defendant officers, as described herein, amounted to excessive use of force.

51. Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

52. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

THIRD CAUSE OF ACTION: FAILURE TO INTERVENE - against defendant officers

53. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 52 of this complaint as though fully set forth herein.

54. That each and every officer and/or individual who responded to, had any involvement and/or was present at the location of the arrest, assault and/or incident described herein knew and was fully aware that plaintiff did not

commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

55. Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

56. Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

57. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

FOURTH CAUSE OF ACTION: UNREASONABLE DETENTION - against defendant officers

58. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 57 of this complaint as though fully set forth herein.

59. Defendant officers denied plaintiff his due process right to be free from continued detention after it was or should have been known that plaintiff was entitled to release.

60. The conduct of defendant officers, as described herein, amounted to unreasonable detention.

61. Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

62. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

FIFTH CAUSE OF ACTION: FABRICATION OF EVIDENCE - against defendant officers

63. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 62 of this complaint as though fully set forth herein.

64. Defendant officers manufactured evidence of criminality against the plaintiff which the prosecutors relied upon to initiate criminal actions against the plaintiff.

65. The conduct of defendant officers, as described herein, amounted to fabrication of evidence.

66. Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

67. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SIXTH CAUSE OF ACTION: CONSPIRACY - against defendant officers

68. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 67 of this complaint as though fully set forth herein.

69. In an effort to find fault to use against the plaintiff who is black, defendant officers met with themselves and with several other individuals on numerous occasions and agreed to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

70. Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

71. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of defendant officers, individually and severally.

**SEVENTH CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/DISCIPLINE/SCREEN AND MUNICIPAL POLICY - against defendant City**

72. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 71 of this complaint as though fully set forth herein.

73. Defendant City of New York, acting through the New York Police Department, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest.

74. Defendant City of New York, acting through aforesaid NYPD, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiff, who is black, on the pretext that they were involved in narcotics, drugs, guns and/or other illicit activities.

75. Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

76. For example, in *Jones v. City of New York*, 603 Fed. Appx. 13 (2d Cir. 2015), Police Officer David Rodriguez arrested the plaintiff in that matter, Javier Jones, merely because he was allegedly informed that Mr. Jones was in the company of another individual named Frantz Machon who allegedly did display a weapon.

77. Officer Rodriguez was questioned at his deposition as to whether it is NYPD's policy to charge all members of a group with criminal possession of a weapon when only one group member is alleged to have possessed a firearm.

78. Officer Rodriguez, as the Second Circuit observed, testified that although NYPD "does not have an official policy of charging all members of a group with criminal possession of a weapon when only one group member is alleged to have possessed a firearm, [] 'That is what we do.'" *Jones*, 603 Fed. Appx. at 15.

79. Officer Rodriguez did further elaborate that "It is like an accomplice to the person with the firearm[]" and that "the normal procedure is when you have a situation like this, everyone gets charged with the firearm because we are going off on what the victim said . . . if the victim said that [Machon] had a firearm, that is going to be the charge for everyone."

80. As the plaintiff in Jones successfully argued before the Second Circuit, Officer Rodriguez's testimony shows that he "is unaware that he does not have probable cause to arrest a mere bystander[]" which confirms the fact that "he has not been trained on this issue by the City [and NYPD]."

81. Here, as was true in Jones, the City and the NYPD has failed to train defendant officers and has failed to instill in them the fact that they lack probable cause to arrest a mere bystander or an individual such as the plaintiff who was merely socializing with his family and friends.

82. Importantly, as noted above, the plaintiff was never in possession of any contraband and did not attempt to tamper with any evidence.

83. In addition to the above, NYPD Police Officer Michael Carsey was recently convicted of felonies for lying under oath and falsifying information while applying for a search warrant.

84. Police Officer Carsey's supervisor, Sergeant William Eiseman, had earlier admitted to fabricating facts to justify searching vehicles and homes for cocaine, marijuana and guns, filing false information to obtain search warrants and performing illegal searches of vehicles and homes. That

Sergeant Eiseman admitted to perjury and fabricating evidence against innocent persons that he falsely arrested and charged with possession of narcotics and/or illegal drugs, and also admitted to training numerous young police officers to commit similar crimes and/or offenses.

85. In addition, in or about October 2011, Detective Stephen Anderson testified against Detective Jason Arbeeny, a veteran of the NYPD. That Detective Anderson testified that, among other things, it is a common practice within the NYPD to plant narcotics and/or illegal drugs -- commonly known within the NYPD as "flaking" -- on innocent persons in order to meet arrest quotas. Detective Anderson referred to the practice of planting narcotics and/or illegal drugs on innocent persons as "attaching bodies" to the narcotics and/or illegal drugs. According to Detective Anderson, this practice "was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators."

86. Regarding the issue of arrest quotas, Detective Anderson confirmed that the NYPD requires officers to fill quotas, and testified that even as a detective "you still have a number [of arrests] to reach while you are in the narcotics division."

87. Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests. *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011).

88. Prior to his testimony, Detective Anderson and his partner provided false testimony in court claiming that they purchased cocaine from certain individuals who as surveillance video later confirmed did not have any sort of contact or communication with Detective Anderson and his partner during the time period that Detective Anderson and his partner claimed to have purchased the controlled substances and/or illegal drugs.

89. Detective Arbeeny was subsequently convicted of planting controlled substances and/or illegal drugs on a woman and her boyfriend, and was

convicted of the charges against him including official misconduct, offering a false instrument for filing and falsifying business records.

90. Recently, the New York Supreme Court, County of Kings, Criminal Term, Gustin L. Reichbach, J., determined that the NYPD's drug unit has a system of flawed procedures that caused Detective Arbeeny's unlawful actions. Judge Reichbach further determined that the NYPD's drug unit has a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes in the never-ending war on drugs." That Judge Reichbach expressed shock at what he described as "the seeming pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed."

91. Further, in or about 2008, the New York Supreme Court, County of Kings, Criminal Term, Albert Tomei, J., determined at a Mapp hearing in *People v. Simms*, Indictment No. 11263/07, which was held on or about September 9, 2008, that the police officers involved in the arrest in that matter are "not credible" and that the police officers' "testimony is so obviously fabricated . . . to avoid any Constitutional objections the defendant may have . . . and that [any] property taken . . . is to be suppressed because it was the product of an unlawful arrest and search and seizure."

92. In addition to the instances of police misconduct described above, several officers of the NYPD -- including but not limited to Detective Christopher Perino, Police Officer Michael Daragjati, Police Officer Henry Tavarez, Police Officer William Masso, Detective Oscar Sandino, Detective Sean Johnstone, Sergeant Michael Arenella, Sergeant Jerry Bowens, Police Officer Michael Pena, Police Officer Nicholas Mina, Detective Kevin Spellman and Police Officer Admir Kacamakovic -- have recently been convicted of various similar crimes as those described herein including but not limited to falsifying police reports, perjury, corruption, robbery, gun running, drug dealing, prostitution, theft and assault. Former NYPD Commissioner Bernard Kerik was also recently convicted of corruption and similar crimes as those described herein.

93. In addition to the named individual defendants, several officers of the NYPD assigned to NYPD-73rd Precinct and NYPD-Housing Police Service Area 2 -- as defendant officers -- routinely make unlawful arrests charging innocent persons with various crimes and/or offenses.

94. Most of the arrests and charges made by officers assigned to NYPD-73rd Precinct and NYPD-Housing Police Service Area 2 are usually voided and/or dismissed by prosecutors for lack of evidence.

95. Defendant City of New York has settled numerous lawsuits brought in this district against several officers assigned to NYPD-73rd Precinct and NYPD-Housing Police Service Area 2 concerning similar arrests and charges as those described herein. *See*, *e.g.*, *See*, *e.g.*, *Ramel King v. City of New York* (17 CV 4494); *Tony Holley v. City of New York* (16 CV 383); *Trevonne King v. City of New York* (16 CV 306); *Eddie Holley v. City of New York* (15 CV 1204); *Jeffy Holley v. City of New York* (15 CV 1202); *Annette Young v. City of New York* (14 CV 55); *Diane Dawson v. City of New York* (13 CV 180); *Ramel King v. City of New York* (12 CV 4322); *Tyquan Myrick v. City of New York* (12 CV 2411); *Robert Stephens v. City of New York* (12 CV 1825); *Ramel King v. City of New York* (12 CV 1824); *Paul Lewis v. City of New York* (12 CV 1323); *Jermaine Tolbert v. City of New York* (12 CV 537); *Anthony Holley v. City of New York* (12 CV 259); *Jermaine Tolbert v. City of New York* (11 CV 4871); *Geneeza Walls v. City of New York* (10 CV 5769).

96. Defendant City of New York maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. In failing to take any corrective actions, defendant City of New York acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiff's injuries as described herein.

97. The actions of defendants, acting under color of State law, deprived plaintiff of his due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms, custom and usage of a right; in

particular, the right to be secure in his person and property, to be free from abuse of process, the excessive use of force and the right to due process.

98. By these actions, defendants have deprived plaintiff of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

EIGHTH CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE I, §§ 5, 6, 8, 11 & 12 - against defendants

99. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 98 of this complaint as though fully set forth herein.

100. By reason of the foregoing, and by arresting, detaining and imprisoning plaintiff without probable cause or reasonable suspicion, and harassing and assaulting him and depriving him of due process and equal protection of laws, defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 5 (prohibiting cruel and unusual punishments), Article 1, § 6 (providing for due process), Article 1, § 8 (guaranteeing freedom of speech), Article 1, § 11 (prohibiting discrimination in civil rights and providing for equal protection of laws) & Article I, § 12 (prohibiting unreasonable searches & seizures) of the New York Constitution.

101. In addition, the individual officers conspired among themselves and conspired with other individuals to deprive plaintiff of his constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

102. The individual officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as officers, agents, or employees. The individual officers' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. The individual officers acted willfully, knowingly, and with the specific intent to deprive plaintiff of his

14

constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution.

103. Defendants, their officers, agents, servants, and employees were responsible for the deprivation of plaintiff's state constitutional rights.

NINTH CAUSE OF ACTION: TORTS (FALSE ARREST/IMPRISONMENT) - against defendants

104. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 103 of this complaint as though fully set forth herein.

105. The conduct of the defendants, as described herein, amounted to false arrest/imprisonment.

106. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

TENTH CAUSE OF ACTION: TORTS (ASSAULT AND BATTERY) - against defendants

107. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 106 of this complaint as though fully set forth herein.

108. By reason of and as a consequence of the conduct of defendant officers, plaintiff sustained bodily injuries with the accompanying pain.

109. The conduct of the defendants, as described herein, amounted to assault and battery.

110. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

ELEVENTH CAUSE OF ACTION: TORTS (NEGLIGENCE AND/OR BREACH OF SPECIAL DUTY OR RELATIONSHIP) - against defendants

111. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 110 of this complaint as though fully set forth herein.

112. Defendants failed to properly care, supervise and protect the plaintiff, failed to ensure the plaintiff's health and safety, and were careless and negligent in their treatment of the plaintiff.

113. The conduct of the defendants, as described herein, amounted to negligence and breach of special duty or relationship.

114. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

TWELFTH CAUSE OF ACTION: TORTS (DEFAMATION) - against defendants

115. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 114 of this complaint as though fully set forth herein.

116. Defendants falsely alleged that the plaintiff attempted to destroy evidence and was in possession of contraband.

117. On or about July 19, 2017 and September 14, 2017, respectively, defendants published their aforesaid false allegations to plaintiff's colleagues, neighbors, friends and family including, but not limited to, Kevin, Ramel, Julien, Grant and Tyra.

118. The above statements by the defendants were made without any just cause or truth to the statements. Additionally, defendants made such statements maliciously, knowing said statements to be absolutely false.

119. Defendants made aforesaid false and malicious statements with the sole intent of exposing plaintiff to public contempt, hatred, ridicule, aversion, disgrace and to induce an evil opinion of the plaintiff and cause plaintiff to be shunned or avoided and injure plaintiff in his employment or occupation.

120. By reason of defendants' statements and actions, plaintiff has been injured in his good name and reputation and has suffered and continues to suffer great pain and mental anguish and has been held and continues to be held in ridicule and contempt by his family members, neighbors, colleagues, friends, acquaintances and the public.

121. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SIXTEENTH CAUSE OF ACTION: TORTS (NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS) - against defendants

122. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 121 of this complaint as though fully set forth herein.

123. The defendants engaged in extreme and outrageous conduct, intentionally and recklessly causing severe emotional distress to plaintiff.

124. Plaintiff's emotional distress has damaged his personal and professional life because of the severe mental pain and anguish which were inflicted through deliberate and malicious actions including the arrest, assault, detention and imprisonment by defendants.

125. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SEVENTEENTH CAUSE OF ACTION: NEGLIGENT HIRING AND RETENTION OF EMPLOYMENT SERVICES - against defendant City

126. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 125 of this complaint as though fully set forth herein.

127. Upon information and belief, defendant City, through its various agencies and departments including the defendants in this action, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

128. Upon information and belief, defendant City, through its various agencies and departments including the defendants in this action, owed a duty of care to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated that an injury to plaintiff or to those in a like situation would probably result from such conduct described herein.

129. Upon information and belief, defendant City knew or should have known through the exercise of reasonable diligence that defendant officers were not prudent and were potentially dangerous.

130. Upon information and belief, defendant City's negligence in hiring and retaining defendant officers proximately caused plaintiff's injuries.

WHEREFORE, plaintiff respectfully prays judgment as follows:

    a. For compensatory damages against all defendants in an amount to be proven at trial;

    b. For exemplary and punitive damages against all defendants in an amount to be proven at trial;

    c. For costs of suit herein, including plaintiff's reasonable attorney's fees; and;

    d. For such other and further relief as the court deems proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

Dated: Brooklyn, New York
       May 21, 2018

                      UGO UZOH, P.C.

                      /s/

                _____
        By:  Ugochukwu Uzoh (UU-9076)
              Attorney for the Plaintiff
              304 Livingston Street, Suite 2R
              Brooklyn, N.Y. 11217
              Tel. No: (718) 874-6045
              Fax No: (718) 576-2685
              Email: u.ugochukwu@yahoo.com